## (April 27, 1981)

■ ALLSTATE INSURANCE COMPANY, Appellant, v JOHN KLEVENO et al., Respondents. — In proceedings to set aside the determination of a court-appointed umpire and to set aside the order fixing the umpire's fee, petitioner appeals from an order of the Supreme Court, Orange County, entered March 10, 1980, which, inter alia, (1) denied petitioner's applications and (2) directed petitioner to pay its equal share of the umpire's fee. Order modified, on the law, by deleting the provision denying the application to set aside the determination of the court-appointed umpire and substituting a provision granting the application and setting aside the determination. As so modified, order affirmed, without costs or disbursements, and matter remitted to Special Term for further proceedings consistent herewith. On December 11, 1978 respondents were the owners of residential premises known as 97 Railroad Avenue, Southfields, New York, a 100-year-old residence. On that date there was in effect between the petitioner and respondents a fire insurance policy in the standard form of the State of New York. The policy of insurance contained the following language: "In Consideration of the Provisions and Stipulations Herein or Added Hereto and of the Premium Above Specified (or specified in endorsement attached hereto), this Company does insure, to an amount not exceeding the amount(s) above specified, the insured named in the declarations above and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and equality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described hereinafter while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere." On December 11, 1978, while the policy was in effect, the property was destroyed by fire. Respondents made a claim for recovery under the policy. Petitioner agreed to its liability, but a dispute arose between petitioner and respondents as to the actual cash value of the destroyed premises. This dispute was to be resolved pursuant to the appraisal procedure contained in the policy, which provided: "APPRAISAL. In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property

covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally." The two appraisers failed to agree on actual cash value or amount of the loss and further failed to agree upon the designation of an umpire. Thus, pursuant to the policy provisions, petitioner applied to the Supreme Court, Orange County, for appointment of an umpire, which application was granted. Petitioner's appraiser submitted a written report in which he concluded that the fair market value of the property before the fire loss was $43,500 using the cost method (which reflects replacement cost of a new building less depreciation) and $45,000 using the income capitalization method (based on earning capacity). Respondents' appraiser did not submit a written appraisal, but orally stated that the replacement cost of the residence was $220,000. The court-appointed umpire appraised the property at $90,000. Although he agreed with petitioner's appraisal value, there were no comparable dwellings at that price ($45,000) in the same area. Therefore, respondents would be forced to build a new house, at a cost of $90,000, in order to put them in the same position as they were prior to the fire. Special Term denied petitioner's motion to set aside the umpire's determination, holding that this was not a case where the umpire refused to hear evidence presented by one of the parties; that the umpire had considered but rejected the opinions of both experts; and that it was not improper for the umpire to take a "common sense approach", which considered the alleged fact that the premises were overinsured and omitted depreciation, since residential structures normally appreciate in value. We disagree. The umpire clearly went beyond the scope of the parties' agreement which provided that "An award in writing *** of any two *** shall determine the amount of actual cash value and loss." Thus, two of the three appraisers would have to agree on the amount of the loss and file their report with the insurance company. The appraiser was not an arbitrator who was given sole authority to make a determination. He was to act only in concert and in conjunction with one of the other appraisers. This contemplated procedure was not adhered to in this case, and the court's order allowing the umpire's decision to stand must be set aside. Moreover, under the terms of the agreement, the coverage was limited to the actual cash value of the property at the time of the loss, but not exceeding the amount it would cost to repair or replace the property. The choice of which of these two methods is to be used in determining the loss lies with the insurer and it may choose to pay out the lesser of the two amounts. Thus, in *Eshan Realty Corp. v Stuyvesant Ins. Co. of N. Y.* (12 AD2d 818, affd 11 NY2d 707) the court held that where the actual cash value of the building was less than the cost of repairing it, the insured's recovery was limited to the actual cash value. Furthermore, a proper deduction from "actual cash value" must be made for depreciation so that the insured does not receive the equivalent of a new building for the loss of an old one. Therefore, the umpire's determination awarding value for a new house was incorrect, not properly reflecting the actual loss sustained by respondents. We therefore set aside the umpire's determination and remit the case to Special Term for the appointment of a new umpire who is to act in accordance with the parties' appraisal agreement. Mollen, P. J., Hopkins, Titone and Weinstein, JJ., concur.